J. F. BYRD v. THE STATE.

No. 6427. Decided November 9, 1921.

Rehearing denied December 14, 1921.

**1.—Theft—Excess of Money Drawn from Bank—Charge of Court—Intent to Appropriate.**

Upon trial of theft over the value of $50, where the evidence showed that the defendant overdrew his bank account and kept the excess, knowing that the bank had made a mistake, the court correctly refused an instructed verdict of acquittal, and charging the jury that if defendant came into possession of said money or any part thereof exceeding fifty dollars by mistake, and knowing same not to be his, he then formed the fraudulent intent to appropriate same and did so without the consent of the owner, he would be guilty of theft, there was no reversible error.

**2.—Same—Charge of Court—Reasonable Doubt—Fact-Paragraph.**

Where the law of reasonable doubt in the usual form was given in the charge as applicable to the case made out by the State, there was no error in the court's failure to apply it to the fact-paragraph. Following Rodrigues v. State, 79 Texas Crim. Rep., 427.

**3.—Same—Charge of Court—Owner—Possession.**

Where the allegation in the second count of the indictment charged theft of money from R. B. Gibson, and Mr. Gibson was shown to be the cashier of the bank from which the money in question was paid by mistake on defendant's draft, and that said Gibson had the actual care, custody and control of the funds of said bank, there was no reversible error.

**4.—Same—Charge of Court—Sum of Money Taken.**

In prosecutions for theft it is not necessary to prove the taking of the exact amount of money or number of articles of property alleged to have

been taken, and there was no reversible error in the court's charge on this phase of the case.

**5.—Same—Charge of Court—Fraudulent Intent—Subsequent Intent to Appropriate.**

Where, upon trial of theft, the court submitted the question of fraudulent intent at the time the money was taken, and that a subsequent intent to appropriate would not suffice, there was no error in refusing a requested charge on that phase of the case.

**6.—Same—Attorney and Client—Charge of Court—Advise of Counsel.**

Where, upon trial of theft by overdrawing by mistake, the evidence showed that he had already drawn the money from said bank, when he consulted a lawyer, there was no error in refusing a requested charge that if defendant acted upon advice of an attorney in receiving said money to acquit him.

**7.—Same—Different Counts in Indictment—Verdict.**

Where, upon trial of theft, the indictment contained four counts of which two were submitted to the jury, and the offense represented a single transaction, both counts being submitted to the jury, it was not necessary that the verdict specify the count under which conviction is had.

**8.—Same—Sufficiency of the Evidence—Theft—Overdrawing Bank Account.**

Where, upon trial of theft, by overdrawing his account knowingly, and keeping the excess fraudulently, the evidence supported the conviction, there was no reversible error.

**9.—Same—Ownership—Possession—Different Counts—Indictment.**

Where but one offense was committed by the defendant, and several counts in the indictment were submitted to the jury, the general charge to the jury upon which a general verdict was rendered supports the conviction of the count in which the stolen money was alleged in a certain bank cashier, and the fact that another count alleged a different owner is not material.

**10.—Same—Jury and Jury Law—Reproduction of Testimony—Practice in Trial Court.**

Where during their deliberations the jury came into court and asked for the reproduction of certain testimony, and the court stenographer read from the evidence of the witness indicated, until stopped by the jury's statement that that was all they wanted, there was no error in refusing defendant's counsel's request that all the evidence on that point be read. Following Wilson v. State, 37 Texas Crim. Rep., 373.

**11.—Same—Intent—Appropriation—Charge of Court—Sufficiency of the Evidence.**

Where the question as to the intent of defendant to appropriate at the time of acquisition was fully submitted to the jury, and they were told if they had a reasonable doubt to acquit the defendant, and the evidence justified the conviction, there was no reversible error. Distinguishing Mitchell v. State 78 Texas Crim. Rep., 79.

Appeal from the District Court of Hardeman. Tried below before the Honorable J. A. Nabers.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

· *James A. Hankerson* and *Shirley Cook,* for appellant:

*R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, Judge.—Appellant was convicted of felony theft in the District Court of Hardeman County, and his punishment fixed at two years in the penitentiary.

It is shown by the statement of facts that appellant deposited on April 14, 1921, $3500 in the Farmers State Bank at Vernon. Between that time and the close of business on April 30, 1921, he checked out $3260.40 of said deposit, leaving a balance of $239.60. One of said checks for $1650 was given to J. T. Byrd, appellant's father, who also carried an account at said bank, and when this check was presented to the bank, $125 in cash was called for and the remaining $1525 was left for deposit to the credit of J. T. Byrd, but by reason of the similarity of the middle initial of the payee's name and that of appellant, a wrong credit entry was made on the bank books and said $1525 was credited to appellant's account. On April 30, 1921, appellant went into said bank and procured a cashier's check for $300, and on said date, according to the employes in the bank, he asked for and obtained a statement of his account. On the same day appellant went to the neighboring town of Chillicothe, in Hardeman County, and deposited the $300 represented by said cashier's check, and drew on the Farmers State Bank of Vernon a demand draft for "my balance," same to be deposited to appellant's credit with the Chillicothe bank when paid. Said draft reached Vernon on May 1st, and by reason of the erroneous deposit to appellant's credit mentioned above, said draft was honored for the amount of $1764.60, which was transmitted to the Chillicothe bank, and on May 3rd credited by the latter bank to appellant's account, and a deposit slip was sent him therefor. On May 4th he drew out of said bank $500, and on May 5th the balance of his account, amounting to $1489.55 in two separate checks. On May 4th, the day appellant got the deposit slip, he went to see a lawyer and told him he thought the bank had paid him more money than he had. The attorney testified very indefinitely as to the conversation and said that he told appellant that if he did not know what his balance was and they paid him more money than was due him, it was not his fault until he found out what it was,—or something to that effect, and that he told appellant that if he found out he was not entitled to that money he could return it,—or something to that effect; that appellant said he did not want to get into trouble,—or something to that effect. The mistake of the Farmers State Bank as above outlined was not discovered by the bank until May 24th, at which time a check was presented for the amount of the J. T. Byrd account, something over $1800. The manner and cause of the mistake was soon found, and officers of the bank, after various unsuccessful efforts to get appellant over telephone, went to Chillicothe to

see him and tried to get him to rectify the matter. Apparently he claimed that they would not have corrected the error had it been against him and in their favor, and when they told him they would have done so he replied, "Like hell you would." He admitted to these men that he figured out that he had gotten more money than was coming to him, but said he had talked to parties who told him he had not done anything wrong, that he had not signed up anything down there. One of said bank officials asked him if he did not acknowledge that he *got more money than was coming to him* and he said "yes," but that he had been skinned out of his salary by another man and had to do something to get by. He told them his father once got $400 from a bank more than was coming to him and that they told his father they would have him arrested, and he paid no attention to them. He accused the bank people of having brought the sheriff along with them to try to scare him, and said he might have fixed it up if they had come to him like a man. The only satisfaction he would give them was that he would think it over for a few days.

Appellant testified and admitted getting more money than he thought was his, and said he drew it out of the bank intending to keep it for the rightful owner, and that when such owner came and proved to his satisfaction that it was his, he would let him have it. He said he had in cash in his house the day the bank officials came to see him, more than $2,000. He said that when he found he had more money in the bank at Chillicothe than he was entitled to, he drew it out to protect the rightful owner. He also admitted knowing he had checked out most of the $3500 deposited by him in the Vernon bank before he drew the draft which was overpaid. This is a statement of the facts sufficiently showing the State's case.

Appellant asked an instructed verdict, which we think was correctly refused.

The trial court told the jury that if appellant came into possession of said money, or any part thereof exceeding fifty dollars, by mistake, and knowing same not to be his, he then formed the fraudulent intent to appropriate same, and did so appropriate it without the consent of the owner, he would be guilty of theft. This was correct, and a conviction under such charge appears to us to be sustained by the facts in this record. Article 1329, Vernon's P. C., cites many authorities applicable to cases such as that now before us.

The following three exceptions were reserved to the charge of the court below. It was objected that there was a failure to insert in that paragraph of said charge wherein the law was applied to the facts, a statement that such facts must be proved beyond a reasonable doubt. The law of reasonable doubt in the usual form was given in the charge as applicable to the case made out by the State, and we have held often that failure to apply it to the fact paragraph was not error. Branch's Ann. P. C., Sec. 11; Rodriguez v. State, 79 Texas Crim. Rep., 437.

The objection that the charge was erroneous in submitting to the jury the guilt of the accused in case he received said money from R. B. Gibson, was not tenable. The allegation in the second count of the indictment charged theft of money from R. B. Gibson, and Mr. Gibson was shown to be the cashier of the bank from which the money in question was paid by mistake on appellant's draft, and Mr. Gibson testified that he had the actual care, custody and control of the funds of said bank.

The objection to the submission of the issue of the appellant receiving $1525, is not supported by the record. The court told the jury in his charge that if appellant received $1525, or any sum exceeding fifty dollars, etc. The proof showing that appellant drew out of the bank by three separate checks, each exceeding fifty dollars, all the money paid by mistake, we are of opinion that the charge was correct and applicable. It is not necessary to prove the taking of the exact amount of money, or number of articles of property, alleged to have been taken.

Appellant asked a special charge to the effect that if he received the money in question intending to hold same pending a determination of the question whether the money belonged to him, and did not then intend to fraudulently appropriate same, he should be acquitted, even though the jury might believe that he subsequently formed an intent to appropriate same. This was given by the trial court, and we think sufficiently presented appellant's defensive theory as supported by the facts. Another special charge asked to the effect that if he acted on the advice of an attorney in receiving said money, and that his intention was to use same until it was determined that it was not his money and that it belonged to some one else, was properly refused. If we understand the testimony of the attorney it was to the contrary as to the character of his advice. Appellant said he went to see the attorney two or three days after he received the deposit slip above mentioned. If this be true he had already drawn from the Chillicothe bank the money in question as shown by date of his checks above set out. Nor do we think a man may appropriate property which he knows not to be his, on the advice of anyone.

The indictment contained four counts, but two of which were submitted to the jury. As we understand the rule, where but a single transaction is referred to and involved, the State may present as many counts in its pleadings as it sees fit and no election will be required. This applies in the instant case. It is not necessary in such case that the verdict specify the count under which conviction is had. But one transaction being involved, but one conviction could legally result, and the doctrine of *autrefois* convict or acquit would apply to any future effort of the State to prosecute the accused.

We do not think the verdict contrary to the evidence. Appellant while a witness stated that he remembered having checked out practically all of the money that he had on deposit with the Vernon bank before he drew the demand draft for deposit with the Chillicothe bank.

He also admitted that he knew that he got more money than was his. The question of his intent with regard to it was submitted to the jury in a manner and language chosen by his own counsel, in a special charge and the jury decided against him upon his contention that he did not intend to keep said money.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

December 14, 1921.

LATTIMORE, JUDGE.—Appellant urges that Gibson, cashier of the Vernon bank which originally paid the money by mistake, was a resident of Wilbarger County; that Allensworth, cashier of the Chillicothe bank from which appellant received the money in question, was in Hardeman County, and that it was erroneous to submit to the jury the question of appellant's guilt predicated on a taking from Gibson, appellant being prosecuted in Hardeman County.

There seems no good ground for such contention. But one offense was committed by appellant, which was charged in four counts in the indictment, among which no election was had. A general charge to the jury was given and a general verdict rendered by them. In such case we have always held that the verdict must be referred to any count which is sustained by the evidence. That legal possession of the alleged stolen money was in Allensworth, cashier of the Chillicothe bank in Hardeman County, at the time manual possession thereof was obtained by appellant, seems obvious. One court of said indictment charged ownership and possession in Allensworth. The submission of the issue of guilt predicated on a taking from Gibson, could not, therefore, have harmed appellant when the evidence fully sustained a verdict of guilt predicated on a taking from Allensworth. The matter might be further discussed under the rule of law making the venue of a prosecution for theft lie in the county where the property was originally taken, or in any county into which the same was carried, in which character of case the alleged owner might live in a county distant from that of the prosecution, but we deem such discussion needless.

During their deliberations the jury came into court and asked for the reproduction of certain testimony. The court stenographer read from the evidence of the witness indicated until stopped by the jury's statement that that was all they wanted. Appellant's counsel asked that all the evidence on that point be read. The court stated that he doubted what that point was and asked counsel to state it, which he failed to do. The court then asked the jury if they desired more evidence read, which they answered in the negative, and they were thereupon retired. No error is shown by this. The right of recall of a witness is limited by the request of the jury. The bill of exceptions com-

plaining of this matter, as qualified by the trial court, shows that when the request for this evidence was made the jury stated what they wanted. The presumption of this court, in the absence of an affirmative showing to the contrary, would be that when the jury stopped the witness, they had what they asked for and wanted. Wilson v. State, 37 Texas Crim. Rep., 373; Art. 755, Vernon's C. C. P.

The question as to the intent to appropriate at the time of acquisition, was fully submitted to the jury whose duty it was to solve this proposition, and they were told that if they had a reasonable doubt of the, fact that appellant had the design to appropriate such property at the time same came into his possession, they should acquit. We are not prepared to say that there is not evidence in the record to justify their finding against appellant. The facts tended most cogently to show both such intent at that time and continuously thereafter. We find nothing in the record to indicate the voluntary return of such money by appellant even up to the time of the trial, which took place some ten months after the alleged taking. The money in question was withdrawn from the Chillicothe bank by several large checks. There is nothing in the Mitchell case, 78 Texas Crim. Rep., 79, 180 S. W. Rep., 115, which makes it analogous to the instant case, and nothing which would call for the granting of this rehearing.

Finding no error in the original opinion, the appellant's motion for rehearing will be overruled.

*Overruled.*